**In re Joseph A. JAFFE, Judge of the Court of Common Pleas; Fifth Judicial District; Allegheny County.**

No. 2 JD 03.

Court of Judicial Discipline
of Pennsylvania.

Nov. 6, 2003.

See also 59 Pa. D. & C.4th 477, 814 A.2d 308.

Before: SAL COGNETTI, Jr., P.J., ROBERT P. HORGOS, MICHELE O'LEARY, DEBBIE O'DELL SENECA, JAMES E. BEASLEY, JOSEPH A. HALESEY, ROBERT L. CAPOFERRI, and PAUL P. PANEPINTO, JJ.

OPINION BY JUDGE HALESEY.

## I. *INTRODUCTION*

The Judicial Conduct Board ("Board") filed a Complaint with this Court on June 23, 2003 against Judge Joseph A. Jaffe ("Respondent"). The Complaint charges Respondent with a violation of Canon 2(A) of the Code of Judicial Conduct and asserts that, as a consequence, he is subject to discipline under Article V, § 18(d) of the Pennsylvania Constitution.

The Board and the Respondent have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1) and a waiver of trial. The Court hereby accepts those stipulations of fact in pertinent part, recited below, as the facts necessary for the disposition of this case.

## II. *FINDINGS OF FACT*

1. The Board is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging misconduct on the part of justices, judges, or justices of the peace, and to present the case in support of the formal charges before the Pennsylvania Court of Judicial Discipline.

2. The Respondent commenced his service as Judge of the Court of Common Pleas, Fifth Judicial District, Allegheny County, on or about January 1986. At the

Respondent's request, President Judge Kelly placed the Respondent on administrative leave, with pay, on August 8, 2002.

3. On or about September 17, 2002, an Indictment in the case of *United States of America v. Joseph A. Jaffe* was issued by a grand jury in the United States District Court for the Western District of Pennsylvania filed to Criminal No. 02–188 (18 U.S.C. § 1951).

4. The Indictment charged that the Respondent:

4.1. Solicited money in the performance of his judicial duties.

4.2. Violated the Hobbs Act by extortion (a felony), as that term is defined in Title 18 of the United States Code, Section 1951(b)(2), in that Respondent solicited payment of money from a partner in the Goldberg, Persky, Jennings and White, P.C. law firm with a main office at 1030 Fifth Avenue, Pittsburgh, Pennsylvania, which then had a substantial number of cases pending before the Respondent. While committing the violation of the Hobbs Act, the Respondent verbally described his "thought process" to the above mentioned partner as "immoral and illegal;" however, in spite of this personal assessment of thought, the Respondent offered "unfettered access" to the partner for *"ex parte"* contact.

4.3. The above charge is graded as a felony punishable by a maximum of twenty (20) years imprisonment.

5. On or about October 16, 2002, a Superseding Indictment in the case of *United States of America v. Joseph A. Jaffe,* was issued by a grand jury in the United States District Court for the Western District of Pennsylvania and filed to Criminal No. 02–188 (18 U.S.C. § 1951).

6. The charges included in the Superseding Indictment are that the Respondent:

6.1. Solicited money in the performance of his judicial duties.

6.2. Violated the Hobbs Act by extortion (a felony) as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that, Respondent solicited payment of money not due him or his office from Edwin Beachler, a partner in the Caroselli, Beachler, McTiernan, and Conboy law firm, which then had a substantial number of cases pending before the Respondent.

6.3. The Respondent is alleged to have further violated the Hobbs Act by extortion (a felony) as that term is defined in Title 18 of the United States Code, Section 1951(b)(2), in that, Respondent attempted to obtain property in the form of payment not due him from a law firm partner, with his consent, induced by the wrongful use of fear, that is, Respondent did solicit payment of financial support for his family and also employment for himself after incarceration, from the aforementioned Edwin Beachler, a partner in the Caroselli, *et. al.* law firm, in exchange for the Respondent's concealment of Beachler's role in the extortion payment to Respondent as set forth in Count 2 of the Superseding Indictment. That charge is graded as a felony, punishable by a maximum of twenty (20) years imprisonment.

6.4. The above charge is graded as a felony punishable by a maximum of twenty (20) years imprisonment.

A certified copy of the Superceding Indictment is attached as Exhibit "A" to the Stipulations of Fact.

7. By Order dated January 15, 2003, the Court of Judicial Discipline directed the Respondent's suspension without pay.

A certified copy of the Order is attached as Exhibit "B" to the Stipulations of Fact.

8. On or about February 10, 2003, the Respondent pled guilty as charged in the Indictment(s).

9. On or about June 5, 2003, the Honorable Donetta Ambrose, Chief United States District Judge for the Western District of Pennsylvania sentenced the Respondent to 27 months in federal prison and a fine of $5,000.00.

A certified copy of the Sentencing Order is attached as Exhibit "C" to the Stipulations of Fact.

## III. *DISCUSSION*

■ As set out in the Findings of Fact, Respondent has been convicted of the commission of felonies and the judgment of sentence thereupon was entered on June 5, 2003. Although not specifically covered in the stipulations, the Court takes judicial notice that no appeal from the judgment of sentence was taken and the time for filing has expired. The conviction, in consequence, has achieved the requisite finality to warrant the imposition of discipline by this Court pursuant to Article V, § 18(d)(1) of the Pennsylvania Constitution. *See, In re Larsen,* 746 A.2d 108, 110 (Pa.Ct.Jud. Disc.1999).

Respondent's conviction, of itself, provides the grounds for the imposition of discipline—the Pennsylvania Constitution provides:

A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for *conviction of a felony* . . . .

Pa. Const. Art. V, § 18(d)(1) (emphasis added). See, *In re Sullivan,* 805 A.2d 71, 74 (Pa.Ct.Jud.Disc.2002); *In re Melograne,* 759 A.2d 475, 477 (Pa.Ct.Jud.Disc. 2000); *In re Larsen, supra.*

The Board has, however, not charged this Respondent with a violation of Article V, § 18(d)(1) for conviction of a felony; but, rather, has charged that Respondent's conduct, which happened to result in conviction of a felony, constitutes a violation of Canon 2(A) of the Code of Judicial Conduct.

Canon 2(A) provides:

A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Although, in this case, it may be easy to say that the underlying conduct of this Respondent which led to his conviction is not such that promotes public confidence in the integrity and impartiality of the judiciary and certainly is not in compliance with the law—in fact, we said as much in our earlier opinion where we ordered Respondent's suspension without pay—we believe it judicially inexpedient, in cases where a Respondent has been convicted of a felony, for this Court to determine anything other than whether a conviction did, in fact, occur. We have said repeatedly that the conviction "*of itself* provides the grounds for the imposition of discipline" (emphasis added). We acknowledge that it may well be difficult to posit a case where a judicial officer's conduct which leads to conviction of a felony does not also violate various judicial canons as well as other constitutional provisions. Examples of this are found in other cases decided by this Court. Therefore, a case in point is *In re Melograne, supra,* where the Respondent was charged with violation of the Constitution, for:

– conviction of a felony,

– conviction of an infamous crime,

– conduct which brings the judicial office into disrepute,

– conduct prejudicial to the administration of justice,

- violation of Rule 1 of the Rules Governing Standards of Conduct of District Justices,
- violation of Rule 2 of the Rules Governing Standards of Conduct of District Justices.

The situation was similar in *In re Sullivan, supra*, and *In re Larsen, supra*. In *Melograne* we said:

> Thus, although the Board has charged the Respondent with other violations which may also justify the imposition of discipline, a review of these other provisions of the Constitution or of the Rules Governing Standards of Conduct of District Justices would be superfluous for the criminal conviction provides a *per se* basis for discipline.

759 A.2d at 477–78. See also *Sullivan, supra*, at 74 and *Larsen, supra*, at 110 where identical dispositions were accompanied by identical language.

 It is noted, however, that in the three mentioned cases, the Respondents were *also charged* with violating the Constitution *by virtue of their convictions* and this was included by the Board as a basis for discipline in those cases. This is not the case here. In this case the Board has not charged that Respondent's conviction of a felony provides the basis for imposition of discipline but rather that Respondent's violation of Canon 2A provides that basis. We dispose of any due process concerns which might be raised in this situation by reference to our decision in *In re Trkula*, 699 A.2d 3 (Pa.Ct.Jud.Disc. 1997) where we were guided by the decision of the Pennsylvania Supreme Court in *In the Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988).

In *Trkula* we said:

> [A]s the Supreme Court made clear in its opinion in *Glancey*, that Court will not be deterred from finding a respon-

dent's conduct has violated a particular constitutional proscription merely because the conduct has not been characterized by the Board as a violation of that particular proscription.

*Trkula, supra*, at 12.

Judge Glancey was charged with violating Article V, § 17(b) of the Constitution but the Supreme Court found that his acceptance of the cash gift constituted a violation of § 17(c). The Supreme Court there stated:

> Nor do we find merit in Respondent's contention that our finding his conduct violative of section 17(c), *for which he has not been charged*, would contradict basic notions of due process. In *Cunningham* we considered this argument and rejected it. "The fact that the Board was concerned primarily with § 17(b) and the provisions of the Code promulgated thereunder *does not preclude this Court from making a finding of a violation under § 17(c) if the record warrants such a finding* ... [*Matter of*] *Cunningham*, 517 Pa. [417] at [429], 538 A.2d [473] at 479." (Emphasis added.)

*Glancey, supra*, at 285–86, 542 A.2d at 1355.

The record warranted such a finding in *Glancey*, because the underlying improper conduct was the same—it was simply alleged to have violated a different constitutional provision, thus there was no surprise; there was no lack of notice; there was no compromise of due process. As the Supreme Court said:

> Judge Glancey was fully apprised of what conduct had precipitated disciplinary action against him ....

*Glancey, supra*, at 286, n. 9, 542 A.2d at 1355, n. 9.

Here, the connection of the conduct to the uncharged violation is even more immediate for the conviction is admitted, see

stipulations adopted as Findings of Fact Nos. 8 and 9.

## IV. *CONCLUSIONS OF LAW*

1. Respondent entered guilty pleas to three Counts of violation of the Hobbs Act, Title 18, United States Code, Section 1951(b)(2).

2. These crimes are classified as felonies.

3. Judgment of sentence on the convictions was entered on June 5, 2003.

4. The aforesaid convictions subject Respondent to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

## ORDER

PER CURIAM.

AND NOW, this 6th day of November, 2003, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

That, either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, within the time set forth above, the Findings of Fact and Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.

O'LEARY, J., did not participate in the consideration or disposition of this case.